13703

UNITED ACCEPTANCE CORPORATION v. KERR

(171 S. E., 38)

Mr. *John D. Nock,* for appellant,

Mr. *D. S. Matheson,* for respondent,

October 12, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

On March 16, 1929, the defendant, respondent here, Kerr, and the plaintiff, appellant here, United Acceptance Corporation, the former therein being termed the grower and the latter being termed the distributor, entered into a written contract, some of the terms of which we hereinafter discuss, whereby the grower appointed the distributor "marketing agent for the purpose of distributing and selling peaches owned or controlled by the Grower."

On the same day, the respondent, Kerr, executed and delivered to the appellant a crop and chattel mortgage, covering certain peach orchards and personal property in Chesterfield County, the consideration thereof being an agreement on the part of the appellant "to advance the said L. A. Kerr money with which to make the crop of peaches," on the premises described, "the total advances not to exceed the sum of Three Thousand ($3,000.00) Dollars," $1,000.00 of which was to be advanced on March 15, 1929, $1,000.00 on April 15, 1929, and not exceeding $1,000.00 on June 1, 1929, the advances to be represented by notes of Kerr payable on or before September 15, 1929, each note to bear interest from date at the rate of 6 per cent. per annum. The mortgage provided for the payment of not less than 10 per cent. attorney's fees in case of enforced collection. Other conditions and stipulations therein contained are later mentioned.

Presumably, although the record may not definitely so show, under the terms of the mortgage, the appellant advanced to the respondent a total sum of $2,500.00. The first advance, $1,000.00, was made March 15, 1929, one day before the date of the mortgage, and is not involved in this action. The second sum, $1,000.00, and the third sum, $500-.00, were represented by notes of the respondent to the appellant, and these notes are involved in the cause.

On June 17, 1930, the appellant instituted this suit, in the Court of Common Pleas for Chesterfield County, to collect the amounts it alleged to be due by the respondent on the two notes last mentioned, claiming that, after allowing all proper credits thereon, the respondent was due on the first note a balance of $458.20, with interest from May 15, 1929, and on the second note the full amount of the principal sum, $500.00, with interest from July 5, 1929, and 10 per cent. of the principal and interest on both notes as attorney's fees.

In his answer, while admitting the execution of the notes, the respondent denied liability thereon. He set up a counterclaim for $8,600.00, based upon the contract between himself and the appellant. After declaring that the contract "was in force during the year 1930," since no notice of the termination thereof had been given by either of the parties under its terms, the counterclaim was stated in the following language: "That under the terms of said contract the plaintiff agreed to make advances to the defendant for the purpose of proper cultivation and caring for his peach orchards in above State and county and such advances were absolutely necessary for the proper cultivation of the orchards and production of salable fruit and for the preservation of the trees and preventing their serious deterioration. The plaintiff failed and refused to make any such advances for the year 1930, although defendant repeatedly made demands upon it to furnish him. And the plaintiff not only refused to make such advances but kept its papers on the records unsatisfied and hindered and delayed the defendant in

securing from any other source the necessary advances and obstructed and delayed him in the proper care and cultivation of his orchards and in this way violated the contract between them and seriously damaged defendant in that he was unable to properly care for the trees in season which resulted in inferior fruit this year and permanently damaged trees. And the plaintiff furthermore at the most critical time with the defendant in his financing did all it could to injure the credit of the defendant by instituting suit against him and by failing and refusing to make a proper accounting and marking papers of record satisfied, and by its violation of this contract and unlawful and willful refusal to carry out the terms of the contract in requiring defendant to gather the fruit before it was ready for shipment and requiring improper handling of said fruit, thereby injuring both its quality and reducing its market value, and caused a loss to the defendant by forcing improper packing and grading of said peaches and its acts in threatening and in bringing suit against the defendant."

The appellant did not demur to the counterclaim, nor did it move that the pleading be stated with more certainty. In a reply thereto, it denied all of the allegations contained therein.

After all the evidence had been received, the appellant moved for a directed verdict "as to that part of defendant's counterclaim which alleges damage as the result of failure of the plaintiff to renew its contract with him for the year 1930, upon the grounds that the evidence shows, the defendant's own testimony shows that he received his 1930 financing at just as early a date as provided for in the 1929 contract of the defendant, had it been renewed for 1930."

After some discussion of that motion, the appellant also moved for a directed verdict, "as to that part of the counterclaim which alleges that the defendant was required to gather fruit before it was ready for shipping on two grounds: (1st) That there is no sufficient evidence to es-

tablish duress; and (2nd) because the defendant's own evidence shows that Dramas was put in charge of that part of the business under authority of the defendant, Kerr, the testimony being that he told Laney to go ahead and pick them the way that Dramas wanted them picked; and (3rd) on the further ground that the provisions of the contract between the plaintiff and the defendant, dated 16th of March, 1929, in which it is provided that 'the distributor shall have charge of the sale and distribution of all peaches produced or shipped by the said grower, being hereby authorized to use such methods and to effect such sale and disposition thereof either on an f. o. b. shipping point, in transit, or delivered basis, all as in their judgment may seem best in order to produce the highest net return to the grower.' And at the bottom; 'The distributor agrees to assume the credit risk for the collection and remittance to the grower of all funds belonging to him based on the final sale of said peaches,' and so forth."

The motions being refused, the trial Judge, Honorable T. S. Sease, instructed the jury as to what he conceived to be the applicable law, and submitted the case to the jury. A verdict in favor of the respondent for $4,000.00 was returned. The appeal here is from the judgment entered thereon.

The twenty exceptions are grouped, in the argument of the appellant, into five questions. We think four of these relate to elements of damage, complained of by the appellant under the testimony in the case. The other sets up the contention that the verdict of the jury was excessive.

The transcript of record contains the entire testimony by question and answer. It is unnecessarily voluminous, and places the burden on the Court of examining the entire record in relation to each of the questions involved in the appeal.

The counterclaim, as the trial Judge remarked, "jumbled its causes and specified all in one paragraph." For the pur-

pose of our consideration, the character of the counterclaim, however, is established by the ruling of the presiding Judge —which has not been questioned here by either the appellant or the respondent—that it alleged a breach of contract on appellant's part, and that the respondent was damaged by such breach.

Our consideration of the appeal may, therefore, be predicated on the basis that there is nothing in the case to support any finding of damages not resulting from a breach of contract.

While some of the allegations of the counterclaim seem of such character as to allege slander of credit, by reason of acts claimed to have impaired and injured the credit of the respondent, it is clear, we think, that the evidence does not warrant any inference that the papers were kept open on record in order to injure the respondent. On the contrary, it does appear that the appellant, having a claim for an unsettled balance, had a right, under the terms of the chattel mortgage given to it by the respondent, to refuse to mark the papers of record satisfied until there had been a legal determination of its claim. A proviso of the mortgage in this respect stated, in express terms, "if the said mortgagor shall pay to the mortgagee all sums advanced, as aforesaid, when due, with interest thereon, and any other sums due mortgagee hereunder, then this mortgage to be void, *otherwise to remain in full force and effect.*" (Italics ours.)

The determination of the vital questions in the appeal rests mainly, if not altogether, upon a construction and application of the contract provisions, taking into consideration therewith the breaches of contract alleged in the counterclaim, in relation to both the provisions of the contract and the testimony offered to prove such breaches.

The contract, appointing the appellant as the respondent's marketing agent for the purpose of selling and distributing

the peaches that he owned or controlled, makes no specific reference to any requirement, imposing on the appellant the duty to make advances, either as to the character of the advances contemplated as being necessary, or as to the extent of such advances, or as to the time when the grower, the respondent, might expect them to be made. The only provision relating to advances we find in the contract appears in the clause that "all advances, actual transportation, handling and inspection charges incurred by the Distributor shall be deducted from the returns to the Grower." Neither does the mortgage contain any language whatsoever looking to any advances on the part of the appellant to the respondent, except the advances expressly named in the instrument, to which we have already referred. The advances mentioned in the mortgage were to be made in the year 1929, and not in the year 1930. The advances required under the terms of the mortgage were all made, so far as the record before us discloses. Furthermore, there was contained in the mortgage, with reference to the advances to be made in 1929, this clause: "And it is further agreed that the mortgagee shall have the right in its absolute discretion, to decline and refuse to make advances hereunder whenever by reason of injury to or destruction of the trees or crop for any other reason, prejudicial to the Mortgagee's interests, said Mortgagee considers it expedient so to do."

We do not see how the marketing contract between the parties, making only casual and indefinite reference to the matter of advances, could be construed as giving the respondent any greater rights in such regard than those appearing in the terms of the chattel mortgage. And since it appears that the terms as to advances contained in the mortgage were fully complied with, we are unable to see anything at all in the facts of the case that can be relied on to justify the contention of the counterclaim that the appellant breached its contract, either by failing to make the advances demanded for the year 1930, or by keeping the papers un-

satisfied of record, or by bringing suit to collect any bal-
ance that might be due for advances made under the 1929
contract. There is no allegation of any *fraudulent breach* of
contract, nor has any testimony been pointed out to support
such allegation even if it should be assumed that, under the
most liberal construction, the counterclaim could be treated
as making it. Since no obligation rested upon the appellant
to furnish advances in 1930, and it having complied with its
obligation to make the required advances for 1929, we are
unable, by any fair reasoning, to hold it liable for damages
for any failure or refusal on its part to make advances de-
sired or demanded by the respondent after the advances of
1929 had been made.

From the examination we have made of the rather
confusing language of the counterclaim, the evi-
dence in the case, including especially the chattel
mortgage and the marketing contract, which written instru-
ments it is the duty of the Court to construe, and the discus-
sion as to the evidence contained in the arguments of coun-
sel, it is our opinion that the only basis for the recovery of
damages in favor of the respondent against the appellant
rested in the allegations of the counterclaim with reference
to the premature harvesting and marketing of the peaches.

The marketing contract, in the first instance, required the
respondent, "the Grower," to deliver the peaches to "the
Distributor," the appellant, "in good condition, all graded
and packed in first class manner F. O. B. cars at their cus-
tomary loading points." But following the provision to that
effect, the contract contained this paragraph: "The Dis-
tributor shall have charge of the sale and distribution of all
peaches produced or shipped by the said Grower, being here-
by authorized to use such methods and to effect such sale
and disposition thereof either on an F. O. B. shipping point,
in transit, or delivered basis, all as in their judgment may
seem best in order to produce the highest net return to the
Grower."

The chattel mortgage, executed contemporaneously with the marketing contract, contained the following stipulations: "And, The said L. A. Kerr hereby contracts and agrees to cultivate and harvest said crops with ordinary care and diligence, and in the event he fails so to do, then the said mortgagee, or its agents is hereby authorized and empowered to enter in and upon said lands, cultivate and harvest said crops of peaches whenever in its judgment its interest renders it necessary so to do, in which event any expenses to which it is put for such cultivating or harvesting of said crop shall be charged to the said L. A. Kerr, and shall stand secured by this mortgage. And, in the event of failure to properly cultivate and harvest said peach crop, as aforesaid, such default and failure on the part of the mortgagor, shall render the whole amount of said indebtedness immediately due and payable."

Dramas, referred to in the motion for a directed verdict, was, according to some of the evidence in the case, the agent and representative of the appellant in the gathering and shipping of the peaches in the season of 1929. Laney, referred to also in that motion, was employed by the respondent, in the same year, to oversee the work of picking the peaches. There was some testimony to show that, in that year, Dramas demanded and forced many of the peaches to be picked before they had sufficiently ripened, and oftentimes had them picked when the fruit was wet from rains, and that the picking of immature peaches and wet peaches for shipment resulted in the fruit deteriorating, and being sold on the market, when they could be sold at all, for a price much lower than that brought at the same time for peaches picked at the proper time and under proper conditions. There was some testimony, too, that this improper harvesting of the peaches was done over the protest of the respondent, and that if he yielded at all to the manner of harvesting, done under the supervision of Dramas, that his yielding was due to threats on the part of Dramas that the "pay roll" of the

laborers, engaged in the work, would be stopped, and that the respondent was not financially situated so as to take care of the pay rolls himself, the payment of which Dramas had assumed in some way to take care of.

This alleged "forcing" on the part of Dramas, as the agent of the appellant, has been termed "duress" by the respondent, and the appellant says it is not "duress," as known to the law.

In his instructions to the jury, the Circuit Judge made no reference whatever to the matter of "duress." As to the duty of the appellant, however, regarding its obligations under the contract, he gave the following instructions: "Now, where they are instructed here to do all in their best judgment and, in that behalf, they live up to their contract, then, if there were damages, the defendant could not recover on his counterclaim, because he leaves it in the contract as in their judgment may seem best to produce the highest net return to the grower. Of course, if they were rash in their judgment, or neglected to exercise good judgment that a man of ordinary care would exercise standing in that position, then they would have to that extent violated the terms of their contract."

There is no complaint on the part of the appellant as to the correctness, or appropriateness, of the legal principles declared. And we agree, with what evidently is its concession, that the principles announced by the Court contain a correct statement of the law applicable to the facts of the cause. Under the provisions of the contract and mortgage, appellant seems to have had the right, under certain circumstances, through its agents, "to enter in and upon said lands, cultivate and harvest said crops of peaches whenever in its judgment its interest renders it necessary so to do." Apparently, as the testimony discloses, Dramas, under the provision of the mortgage, and under the provisions of the contract, which we have quoted, was sent to the peach orchards of the respondent for the purpose of seeing to the

harvesting and shipping of the peaches. It is fairly inferable from the actions of the appellant that it had reached the conclusion that the respondent was not harvesting the peach crop "with ordinary care and diligence."

As indicated, and especially so when the appellant has not questioned the correctness of the instruction of the trial Judge, which we have quoted, it was the duty of the appellant and its agent, in the gathering of the peaches, "to exercise such good judgment as a man of ordinary care and prudence would exercise standing in that position." If the appellant and its agent "were *rash* in their judgment," and, in their "rashness," their negligent acts brought damage to the respondent, certainly he should recover the losses sustained thereby.

We are, therefore, not concerned with the law as to "duress." The Circuit Judge, in our opinion, properly instructed the jury on the law pertaining to the respondent's cause of action, set up in the counterclaim, for the damages he alleged he sustained because of the improper handling of the peaches on the part of the appellant's agent.

In the exceptions of the appellant, many questions as to the admissibility of evidence have been raised. Because of the conclusion we have reached, it does not appear necessary to pass upon these several matters. If there were errors, as alleged by the appellant, they may not occur again, since, under the judgment we are rendering, the issues between the parties in another trial will be more limited than they were in the trial from which this appeal has come.

For the errors indicated, the judgment of this Court is that the judgment below be, and the same is hereby, reversed, and the cause be remanded to that Court for a new trial.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.